399 So.2d 510 (1981)
STATE of Florida, Appellant,
v.
Charles L. SWANK and Timothy M. Key, Appellees.
No. 80-914.
District Court of Appeal of Florida, Fourth District.
June 10, 1981.
Rehearing Denied July 8, 1981.
*511 Jim Smith, Atty. Gen., Tallahassee, and Stewart J. Bellus, Asst. Atty. Gen., West Palm Beach, for appellant.
Douglas S. Lambeth, Fort Lauderdale, for appellee Key.
Richard Bergstresser, Miami, for appellee Swank.
HERSEY, Judge.
Defendants were charged with possession of cocaine. The trial court granted their motions to suppress the drugs and the State now challenges the suppression of that evidence.
On May 30, 1979, at approximately 4:00 a.m., Officers Patterson and Flint responded to a call from the local Hilton Hotel. Upon their arrival, the night clerk explained that occupants of a room, two men and a woman, were making numerous long distance telephone calls and running up a sizeable bill. Although the room had been paid for in advance, the clerk expressed concern that the occupants might "skip" without paying for the calls. The officers where then shown the hotel registration card which indicated a non-existent automobile license number.
After receiving all of this information, the officers proceeded to defendants' hotel room and knocked on the door, identifying themselves as police officers. They were told to "hold on for a minute." The officers then heard noises of movement from inside the room, including the sound of a sliding glass door being opened. After a few moments, defendant Swank, clad only in a towel, answered the door, opening it only as far as allowed by the night chain. The officers asked Swank if he was Steven Loukenban, the name under which the room was registered. Swank unlocked the door and explained that he had signed the registration card under a fictitious name. At that point, the officers asked for identification and requested permission to enter the room. Swank invited them in.
Upon entering the room the officers observed that the only other occupant was defendant Key. When questioned about their female companion, both defendants denied her existence. The officers then requested permission to check the balcony which led out from the sliding glass door. They were told to "go ahead." There they found a duffel bag stuffed between the bars of the balcony railing. Both defendants denied ownership or knowledge of the bag.
Since the bag had no outer identification, the officers looked inside in an attempt to ascertain the rightful owner. Discovered was a quantity of cocaine and several hotel receipts in defendant Key's name.
Both officers were dressed in standard police uniform, including hats, badges, guns, nightsticks and walkie-talkies. However, *512 their guns were never drawn nor any other weapons displayed. The officers were polite in their requests and felt that the permission to enter the room and check the balcony was freely and voluntarily given.
The trial court determined that, under the circumstances, defendants' consent was the result of submission to apparent authority. In reaching this decision, the court emphasized that the police officers were "pretty healthy-looking and were in uniform." The court also considered the time 4:00 a.m., and defendant Swanks' dress (wrapped in a towel).
We find the circumstances insufficient to infer submission to apparent authority and therefore reverse. In doing this, we do not intend to invade the fact-finding province of the lower court by resolving conflicts in testimony. There was no conflicting testimony on this point as defendants did not testify. Further, the trial court specifically stated that it believed that the officers testified truthfully. Thus, we hold that the facts reveal voluntary consent, not submission to authority.
It has been held that silent compliance to a police request may be nothing more than submission to apparent authority. Ingram v. State, 364 So.2d 821 (Fla.4th DCA 1978).
On the other hand, the presence of uniformed and armed officers does not necessarily vitiate express consent. Presence alone, absent any indication of coercive words or acts, misrepresentation, deception, or trickery, is insufficient to raise an inference of submission to police authority. United States v. Griffin, 530 F.2d 739 (7th Cir.1976); United States v. Marshall, 452 F. Supp. 1282 (S.D.Fla. 1978) rev'd. on other grounds 609 F.2d 152 (5th Cir.1980). Where police officers have the right to believe that defendants' express consent to enter a room was knowing and voluntary because they had done nothing to coerce such consent, their presence in the room is legal. State v. Ruiz, 360 So.2d 1320 (Fla.2d DCA 1978).
There are two other Florida cases seemingly on point which we have considered, but here reject because of certain differentiating factors.
In State v. Gansz, 297 So.2d 614 (Fla.4th DCA 1974), the defendant was aroused from sleep late at night and confronted by his probation supervisor and two unknown men. The probation supervisor informed the defendant that he wanted to search the house. Gansz replied, "Sure man, I am going to sleep." This Court found that Gansz was merely acquiescing to the state's show of authority. There are two basic and important distinctions between Gansz and the instant case. The first is that the intruding individual in Gansz was the defendant's probation supervisor. There was thus a previous and continuing relationship between the two parties involved. This was no happenstance confrontation such as developed with Swank and Key. The second difference between Gansz and the instant case is that Gansz was aroused from sleep. By taking advantage of the defendant's sleep-ridden condition, the probation supervisor in Gansz employed trickery and thus an inference of submission to authority was raised.
In Collins v. State, 143 So.2d 700 (Fla.2d DCA 1962), two West Palm Beach police officers traveled to a motel in Rivera Beach, obtained Collins' room number, proceeded to that room and knocked on the door. Collins peered through a window, recognized the police officers and called out "wait a minute." Shortly thereafter, Collins opened the door and invited the police officers into the room. The question presented by this set of facts was whether the police officers, who were outside their jurisdiction and thus without official authority, were acting as private citizens. The trial court concluded that the officers' actions were those of private citizens and therefore the "plain view" evidence seized from the room was admissible. Disagreeing with this conclusion, the court of appeal observed:
The actions of the police officers, which culminated in the arrest, search *513 and seizure, extended over a period of two days. All of these actions, while in the City of West Palm Beach, were consistent with their duties and under their power and authority as police officers. Their previous interrogations with Collins had been as police officers, and their presence at the door of the motel room, in the uniform signifying their official position as police officers, was a part of their continuing investigation begun as police officers. They were acting under color of their office. We conclude that Collins admitted them to the motel room by virtue of the force and effect of their official position as police officers. He did not admit them as private citizens. An officer gaining access to private living quarters under color of his office and of the law which he personifies must then have some valid basis in law for the intrusion. Id. at 703.
We interpret this to mean that when a police officer's actions are made under color of his official position, he must in fact have authority to act. With this principle we concur. However, we would disagree with an interpretation of this language requiring an officer to have probable cause before knocking on a door and gaining entrance by consent or holding that the presence of uniformed officers, without more, invalidates consent as a submission to apparent authority. And here, again, as in Gansz, the intruders had previously been in contact with Collins who recognized them when they appeared at the door of his motel room.
In the instant case, there was no previous contact between the law enforcement officers and the defendants. Furthermore, the testimony reflects that defendants were telephoning while the officers were speaking to the night clerk and therefore were not awakened from sleep by the police. Accordingly, neither Collins nor Gansz is controlling authority here.
Consent to the entry of police officers into a constitutionally protected area must, like consent to search, be freely and voluntarily given. See State v. Rardin, 392 So.2d 350 (Fla.4th DCA 1981). The state has the burden of proving such consent by clear and convincing evidence. Jordan v. State, 384 So.2d 277 (Fla.4th DCA 1980). This burden is met by evidence that a defendant expressly invited or agreed to entry or search and the actions of the police were reasonable, non-coercive, and did not involve misrepresentation, deceit or trickery. See State v. Rardin, supra.
In the instant case, the police officers were expressly invited into defendants' hotel room and expressly given permission to check the balcony area. There was no evidence of coercion, misrepresentation, deceit or trickery. In short, the express consent was freely and voluntarily given. Therefore, the officers' observation of the duffel bag was not in violation of defendants' rights.
Since defendants disclaimed ownership or control over the bag, the subsequent search for identification of the rightful owner was reasonable.
Accordingly, we reverse the trial court's order suppressing the cocaine found in the duffel bag and remand the case for further proceedings.
LETTS, C.J., and DOWNEY, J., concur.