483 So.2d 791 (1986)
Clifford WALKER, Appellant,
v.
STATE of Florida, Appellee.
No. AR-200.
District Court of Appeal of Florida, First District.
February 12, 1986.
Rehearing Denied March 19, 1986.
*792 T. Whitney Strickland, Jr., Tallahassee, for appellant.
Jim Smith, Atty. Gen., and Thomas H. Bateman, III, Asst. Atty. Gen., Tallahassee, for appellee.
JOANOS, Judge.
Clifford Walker appeals from the judgment and sentences imposed on his conviction on counts of sexual assault and first degree murder. Walker raises four points for review: (1) the denial of his motion to suppress evidence seized in a warrantless search of his home, (2) the allegedly prejudicial presentation of the prosecution case, (3) the trial court's refusal to admit a proffered defense exhibit into evidence, and (4) a jury instruction denoting Walker's attempted suicide as flight. We affirm.
*793 On October 23, 1981, Millicent Wilson, a student at Florida Agricultural and Mechanical University (FAMU) was sexually assaulted and murdered in her dormitory room. During the course of the investigation which followed the discovery of Miss Wilson's body, Walker, also a FAMU student, became a suspect in the case.
On November 22, 1981, at approximately 10:00 p.m., Walker's roommate returned to the trailer which the two men occupied.[1] Mills, the roommate, found a note on the kitchen table which read:
I'm going to sleep for awhile. I would not like to be disturbed by anyone for any reason. Love, Clifford.
Shortly thereafter Mills went out for the evening and returned to the trailer in the early morning of November 23, 1981. Later on November 23, 1981, Thanksgiving morning, Mills discovered blood on the bathroom sink, wall, and mirror. Walker called to Mills from the bedroom, and told Mills that he had had a nose bleed. Mills returned to the living room where he had been sleeping on the couch. About thirty minutes later Walker walked into the kitchen and dropped a metallic-sounding object into the sink; he then returned to the bedroom. Mills got up to investigate, and discovered that Walker had a cut on his arm. At that point, Mills sought help from friends in the area. One of the friends called the FAMU Police Department, while Mills telephoned for an ambulance.
Mills and the persons he contacted returned to the trailer to assist Walker until the ambulance arrived. Officer McFadden of the FAMU Police Department arrived at the trailer either immediately before or at the same time as the arrival of the emergency medical team. Shortly thereafter the emergency medical team left with Walker. When questioned by Officer McFadden concerning a possible motive for Walker's suicide attempt, Mills stated that Walker had been depressed since he had been questioned in connection with the Wilson case. Mills then directed Officer McFadden's attention to a knife in the kitchen sink, whereupon McFadden ordered Mills and his friends to leave the trailer. At that point, McFadden secured the premises and called the investigators.
Shortly thereafter Leon County Investigator Donna Cormier was dispatched to the trailer. Investigator Cormier processed the trailer as the scene of an attempted suicide. First she photographed the scene, then collected various items that might be associated with the suicide attempt, i.e., two knives, blood-stained clothing, and notes and letters. All of the items seized were in open and plain view. At trial, when Investigator Cormier was asked whether any of the officers attempted to obtain a warrant, she stated there was no need for a warrant because she was investigating an act of violence.
Prior to trial, the items collected at the trailer were the subject of a motion to suppress. The motion was denied. The jury returned a verdict of guilty on both counts charged. On the count one murder conviction, Walker was sentenced to a life term with no possibility for parole for twenty-five years. On the count two sexual assault conviction, Walker was sentenced to serve a seventy-five year term of imprisonment.
Walker's first allegation of error is the denial of the motion to suppress the items collected at the trailer. Walker's argument is addressed to what he characterizes as two warrantless intrusions into his home, one permissible and one impermissible. Under this theory, Walker considers the initial entry permissible due to the exigent circumstances of his suicide attempt and resulting need for medical assistance. Walker contends the exigency ended when the emergency medical team removed him from the premises. Therefore, the subsequent warrantless search of the trailer and the collection of evidence pursuant thereto constituted an unreasonable, hence unlawful, second intrusion which required suppression of the items seized. The State *794 contends there was only one entry, which was permissible because based on Mills' consent in the form of a request for assistance for Walker. The State urges that Mills' consent extended to the subsequent police duty to investigate the circumstances which took them into the home initially.
The starting point for analysis of a Fourth Amendment search and seizure issue is the general principle that a warrantless search is per se unreasonable. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, reh'g denied, 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120 (1971); Hornblower v. State, 351 So.2d 716 (Fla. 1977). If the initial intrusion which brings an item into plain view of an officer is not supported by a warrant, the item seized may still be admissible if one of the exceptions to the warrant requirement applies. Coolidge v. New Hampshire, supra. See also: C. Whitebread, Criminal Procedure § 11.02, at 213-214 (1980). One such exception to the warrant requirement is consent. Schneckcloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). To be valid, consent must be voluntary, and the question of voluntariness must be determined from the totality of the circumstances. Schneckcloth v. Bustamonte, supra; Zeigler v. State, 402 So.2d 365 (Fla. 1981); Denehy v. State, 400 So.2d 1216 (Fla. 1980); Bailey v. State, 319 So.2d 22 (Fla. 1975).
Another exception to the warrant requirement is the existence of exigent circumstances which makes an intrusion into a protected area reasonable. See: Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); Hornblower v. State, 351 So.2d 716 (Fla. 1977); Cross v. State, 469 So.2d 226 (Fla.2d DCA 1985); Haugland v. State, 374 So.2d 1026 (Fla. 3rd DCA 1979). An example of an exigent circumstance that would justify police entry into a protected area is an emergency situation requiring investigation or the rendering of aid. Zeigler v. State, 402 So.2d 365 (Fla. 1981), cert. denied, 455 U.S. 1035, 102 S.Ct. 1739, 72 L.Ed.2d 153 (1982); Wooten v. State, 398 So.2d 963 (Fla. 1st DCA 1981); Long v. State, 310 So.2d 35 (Fla. 2d DCA 1975); Webster v. State, 201 So.2d 789 (Fla. 4th DCA 1967). Once an officer is legally inside the protected area, by express consent or the implied consent attendant upon an emergency situation, items inadvertently discovered in plain view may be seized as evidence. Ensor v. State, 403 So.2d 349 (Fla. 1981); Zeigler v. State, supra.
Wooten v. State, 398 So.2d 963 (Fla. 1st DCA 1981), presents a factual situation somewhat comparable to the situation which pertains here. In Wooten a police officer made a warrantless entry into appellant's apartment in response to an emergency situation, i.e., the possible abuse of a child. The officer determined the child was in grave condition and concluded that appellant was probably responsible. The officer called for rescue personnel and other officers to provide support. This court found that the entry of rescue personnel and the other officers called as backup was reasonable. While in the apartment, the officers observed in plain view what appeared to be blood stains on the floor and on several items of clothing. Shortly after the rescue team left with the child, a detective arrived who confirmed that the stains were blood. The detective then directed and assisted in the taking of photographs, blood samples, and the seizure of the suspected items which were in plain view. Only those items directly related to the suspected child abuse were taken by the officers.
In Wooten, as in the case here under review, appellant urged the exigency had ceased by the time the detective arrived and the subsequent one hour or more search was not the type of cursory warrantless search sanctioned in Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). This court disagreed, reasoning that:
the entry of all officers on the scene was part of one continuous episode, initially justified by exigent circumstances. We know of no decision and no logical basis for holding that a lawful entry is limited *795 to a single officer, nor any rule that prohibits one officer, legitimately on the premises, from being joined by a sufficient number of his fellow officers, or his superior officers, to take charge and to perform the police functions which are then immediately justified and required. Wooten v. State, at 967.
In this case, as in Wooten, the initial entry of the officers was consensual. Here, Mills' request for assistance in the care of Walker constituted an express consent to the entry of the trailer jointly occupied by Walker and Mills. And it is clear that in the circumstances which here attain, a consent given by Mills is valid as to Walker because a joint occupant has "authority to consent to a search of jointly held premises, if the other party is unavailable." Silva v. State, 344 So.2d 559, 562-563 (Fla. 1977). See also: United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); Smith v. State, 465 So.2d 603 (Fla. 3rd DCA 1985). It is undisputed that the trailer was occupied by both Walker and Mills. Although Walker was present when the initial entry occurred, his physical condition made him "unavailable" to give or withhold consent.
In our view Mills' request for help constituted an express consent to the entry of the officers, and the subsequent entry of Investigator Cormier and the seizure of items in the trailer was a logical extension of that consent. The items which were collected as evidence were in plain view, and were consistent with an investigation of attempted suicide. We conclude that "the entry of all officers on the scene was part of one continuous episode," which was justified by Mills' request for help. Wooten v. State, 398 So.2d 963, 967 (Fla. 1st DCA 1981). Consequently, the officers' subsequent observation and seizures of items in the trailer did not violate the provisions of the Fourth Amendment.
The second issue raised by Walker is the allegedly prejudicial presentation of the prosecution case. This issue concerns the State's cross examination of a fingerprint expert who had been recalled as a defense witness. The prosecutor asked the expert if he had worked on the Bundy case, and then asked how much time he had spent on the analysis of prints in that case. Defense counsel approached the bench and there objected to the comparison of the Bundy case with this case, and moved for a mistrial. The trial court denied the motion, but directed the jury to disregard the references to the Bundy case. Specifically, Walker urges that (1) certain improper prosecutorial comments in closing argument, taken together with (2) the prosecutor's expression of confidence in the credibility of Detective Bruce  who testified that appellant was the only suspect, and (3) an implicit comparison of this case to the Bundy trial, all had a cumulative effect which denied him a fair trial. We do not consider that the alleged improprieties, when viewed in the context of the trial as a whole, constitute prejudice that would mandate a new trial. See: State v. Murray, 443 So.2d 955 (Fla. 1984); Wilson v. State, 436 So.2d 908 (Fla. 1983); Castor v. State, 365 So.2d 701 (Fla. 1978).
The third issue presented by Walker concerns the trial court's refusal to admit into evidence a letter purporting to be from the killer of Millicent Wilson. The proffered letter was addressed to a young woman who had no connection with this case, and was received by her during the time period Walker was incarcerated pending trial. The record is clear that Walker could not have authored the letter. The letter states, in part: "I am going to kill you like I killed Millicent on FAMU campus." The letter is unsigned. On the envelope, in the area designated for a return address, is written "The Killer."
Walker maintains the letter's admission was sought for the non-hearsay purpose of demonstrating that there were other potential suspects in the Wilson murder, and that evidence is admissible if it "tends in any way, even indirectly, to prove a defendant's innocence." Chandler v. State, 366 So.2d 64, 70 (Fla. 3rd DCA 1978). Although the cases cited by appellant in support of admissibility of the letter are on point, we find the letter was properly excluded on hearsay grounds due to the lack *796 of "corroborating circumstances [which] show the trustworthiness of the statement." § 90.804(2)(c), Fla. Stat. (1983).
As his final point for review, Walker contends the trial court erred in instructing the jury pursuant to the following instruction requested by the state:
The attempted suicide of a person, after he is suspected of a crime, if proven beyond a reasonable doubt, may be considered by the jury as an indication of a desire to evade prosecution and one of a series of circumstances from which guilt may be inferred. You may find that the attempted suicide considered with other facts and circumstances is consistent with innocence. Evidence of attempted suicide and the significance to be attached to such evidence are matters exclusively within the province of the jury.
In light of the facts of this case, we find no error in the contested instruction. See: Straight v. State, 397 So.2d 903 (Fla.), cert. denied, 454 U.S. 1022, 102 S.Ct. 556, 70 L.Ed.2d 418 (1981); Daniels v. State, 108 So.2d 755 (Fla. 1959). Accord: Bundy v. State, 455 So.2d 330 (Fla. 1984).
Accordingly, the judgment and sentences appealed from are affirmed.
ERVIN and BARFIELD, JJ., concur.
NOTES
[1] The trailer formerly occupied by Walker and Mills is set up on the FAMU campus as a part of the housing provided for students by the university.