## STATE OF FLORIDA v MULLIGAN

Case No. CTC87-20177-G

County Court, Volusia County, Florida

January 21, 1988

### APPEARANCES OF COUNSEL

Larry Sikes, Assistant State Attorney, for plaintiff.

C.A. Van Hook for defendant.

### OPINION OF THE COURT

SHAWN L. BRIESE, County Judge.

THIS CAUSE having come before the Court on Defendant's Motion to Suppress on December 22, 1987 and the Court having heard testimony therein, finds as follows:

The evidence showed that Pierson Police Chief George Leary received a phone call with regard to a vehicle in a ditch. The wrecker

operator would not remove the vehicle without authorization from the police department. Evidence showed that there is a policy in Pierson that wreckers do not remove any vehicle involved in an accident until the police department is notified. The vehicle was located in a ditch between a gas station and town property. Chief Leary could not determine whether or not there was any damage until the vehicle was removed from the ditch. There was no damage.

Chief Leary testified that when he contacted the defendant at the scene he asked what happened to which defendant responded that he didn't know. Defendant indicated that he was bringing a female home after leaving a bar and that he remembered waking up in his car in the ditch.

Chief Leary who was standing on the passenger side of the vehicle asked the defendant if he minded if he looked in the car. The defendant responded no and further indicated that he had nothing to hide. The defendant then unlocked and opened the car door. Once the door was opened cannabis and paraphernalia were observed in open view as opposed to plain view. Chief Leary also testified that at the time he made contact with the defendant that there was no indication of the defendant being under the influence of alcohol. He was going to let the defendant walk off.

The defendant's testimony is basically in accord with Chief Leary's testimony. The defendant, with regard to his contact with Chief Leary, did testify that the Chief did try the passenger door handle which was locked. The defendant testified that he offered to open the car door, i.e., "If you want to look in the car I'll open the door." The Chief accepted the offer. The defendant did testify he could have just walked away. The defendant also testified that he didn't think the car would be pulled out of the ditch without cooperating with the police.

A search conducted pursuant to consent is an exception to the warrant requirement as long as there is clear and convincing evidence of a free and voluntary consent. *Lockwood v. State,* 470 So.2d 822 (Fla. 2d DCA 1985). The question of voluntariness must be determined from the totality of the circumstances. *Walker v. State,* 483 So.2d 791 (Fla. 1st DCA 1986).

It is clear that one who initiates and invites a search cannot thereafter object to either the search or the seizure of items discovered as a result of the search. *State v. Wise,* 356 So.2d 920 (Fla. 2d DCA 1978) and *State v. Patterson,* 252 So.2d 398 (Fla. 2d DCA 1971).

The Court in *State v. Rardin,* 392 So.2d 350 (Fla. 4th DCA 1981) was faced with a similar factual situation as found herein. The facts

show that a mobile home fire resulted in a routine investigation to determine the cause and origin of the fire. A detective, upon arrival at the scene, identified himself to the defendant and informed the defendant of his reason for being there. He requested permission to go inside the mobile home and look around. The defendant agreed and unlocked the door.

The detective, after subsequently receiving information that the fire might have been started in a murder attempt, returned approximately two and one half hours later accompanied by a Deputy State Fire Marshall and an Assistant Fire Chief. The three reinspected the premises, took photographs and collected burnt debris samples for laboratory testing. A motion to suppress resulted.

The Court found that the defendant knowingly and voluntarily permitted the investigators to enter and search his mobile home. The investigators' actions were found to be entirely reasonable and noncoercive. The defendant, by affirmatively responding to the investigators' request to enter the mobile home and unlocking the door for them, expressly invited or agreed to the search.

See also *Chesnut v. State,* 404 So.2d 1064 (Fla. 1981). (There was consent to board and search defendant's boat when sheriff's deputies requested permission to board and were told by defendant "be my guest"); *Slater v. State,* 90 So.2d 453 (Fla. 1956) (Defendant, who was apprehended for a traffic violation, who testified that he did not mind if the officers looked in the car and who took the keys from the ignition and unlocked the trunk waived any right to protest that the lottery materials found inside were obtained by unreasonable search); *Longo v. State,* 26 So.2d 818 (Fla. 1946) (Defendant, who was suspected of transporting lottery tickets, who was asked by police officers, upon an automobile stop, if they might search his car gave his consent to search when he voluntarily handed over a key with which to unlock the trunk); and *Sharpe v. State,* 370 So.2d 42 (Fla. 1st DCA 1979) (Defendant consented to inspection of trunk by agricultural inspectors when he opened rear door of cargo area on his own volition. See also *Marvin v. State,* 411 So.2d 169 (Fla. 1982) and *State v. Swank,* 399 So.2d 510 (Fla. 4th DCA 1981).

The Pierson Police Department—Pierson wrecker operator policy, in the instant case, of not towing any vehicle involved in an accident (as opposed to a vehicle or vehicles involved in an accident *involving damage)* without authorization of the police department is unusual and likely the product of a small town environment with a low traffic accident volume. The facts clearly showed that the lack of damage to

40

defendant's vehicle was only evident after the car was removed from the ditch. It was also clear from the testimony that damage to defendant's vehicle was possible. It was thus reasonable, in this case, that the police department was contacted notwithstanding the manner in which they were contacted.

The facts also showed that Chief Leary was going to let the defendant walk off. The defendant also testified he could have just walked away. The defendant then testified that he didn't think the car would be pulled out without cooperating with the police. This Court cannot glean any suggestion of defendant's assertion that his car would not be removed from the ditch absent his cooperation other than from his own statement. Defendant's suggestion is illogical when he himself testified he could have just walked away. The defendant did not specify the type of cooperation that he thought was required.

This Court, based on the above and foregoing, cannot find an illegal detention which would subject any consent to closer scrutiny. The defendant may have felt some compulsion to relate what he knew about the accident but it is not logical or reasonable to suggest that the defendant felt that he had to let the Chief search his vehicle prior to it being removed from the ditch. It is particularly evident, based on the defendant's assertion that he had nothing to hide and his offer to open the car door and his unlocking of the car door based on either the Chief's request or trying of the door handle, that the search in the instant case was based on consent; consent absent coercion, misrepresentation, deceit or trickery. There is clear and convincing evidence of a free and voluntary consent. Note that the presence of uniformed and armed officers does not necessarily vitiate express consent. Presence alone, absent any indication of coercive words or acts, misrepresentation, deception, trickery, is insufficient to raise an inference of submission to police authority. *State v. Swank, supra.* THEREFORE, it is hereby:

ORDERED and ADJUDGED that the Defendant's Motion to Suppress is denied.

DONE AND ORDERED in Chambers at Daytona Beach, Volusia County, Florida, this 21st day of January, 1988.