638 So.2d 577 (1994)
Eugene ALLEN, Appellant,
v.
STATE of Florida, Appellee.
No. 92-2655.
District Court of Appeal of Florida, First District.
June 8, 1994.
Rehearing Denied July 18, 1994.
*578 Nancy A. Daniels, Public Defender, Nada M. Carey, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., Carolyn J. Mosley, Asst. Atty. Gen., Tallahassee, for appellee.
SMITH, Judge.
Appellant appeals his convictions and sentences for second degree murder with a firearm and aggravated battery with a firearm. He raises several points on appeal, only one of which will be addressed in this opinion. He contends the trial court erred in denying his motion to suppress evidence seized in a warrantless search of his home. We affirm.
On May 24, 1991, the victim was a visitor in appellant's home when he was shot through the hand with a shotgun. The victim left appellant's home and was at the street when he returned to the house at appellant's urging. The two conversed on the porch for a few minutes and then went back into the house where, after a brief interval, appellant shot the victim through the head with a.38 pistol, killing him. A neighbor, who heard the gunshot, called the police.
Deputy Miller responded to the call. As Miller approached appellant's front door, he noticed blood on the porch steps and doorway and called for emergency medical services (EMS) and backup. At that time, appellant came around from the side of the house, whereupon Miller asked him what was going on. Appellant responded that they [he and the victim] were fighting and that he had shot him, indicating there was a man inside the house. Appellant opened the door, but for safety reasons, Miller did not allow appellant to enter the house, but instead placed appellant inside Miller's patrol car. Miller returned to the house, checked the victim's pulse, and then did a quick sweep of every room in the house searching for other persons. The EMS technicians arrived and advised Miller that the victim was dead. Miller instructed the EMS personnel to stand outside the yard and cordoned off the area.
Within minutes of Miller's arrival, the crime scene investigators, Officers Hill and Lewis, arrived. They photographed the entire house and collected the evidence which was in plain view,[1] but they did not search dresser drawers or anything of that nature. After he was Mirandized, appellant told Miller where to find the .38 pistol, and Officer Hill retrieved the pistol from a shed located *579 on appellant's property where appellant said that it could be found. During this processing of the crime scene, which took several hours, a search warrant was not obtained or sought.
Prior to trial, appellant filed a motion to suppress photographs and evidence recovered from his home, contending that the search was without his consent and a search warrant was required. The motion was denied, and in his subsequent trial for first degree murder, these items were introduced into evidence against him. The jury rejected his claim of self defense and returned a verdict finding him guilty of second degree murder with a firearm and aggravated battery with a firearm.
On appeal, appellant relies upon case law from our highest court declaring that there is no murder scene exception to the warrant requirement which allows the police to conduct a general crime scene investigation at the scene of a murder. Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). Appellant recognizes that Mincey permits a warrantless search of the area to see if there are other victims or if a killer is still on the premises, and that police may seize any evidence that is in plain view during the course of their legitimate emergency activities. Appellant contends, however, that a crime scene search and seizure of evidence is strictly limited by the exigency present. Appellant maintains that the exigency exception is not applicable in this case because when Officers Lewis and Hill entered the home, Officer Miller had already completed his protective search and secured the premises; therefore, nothing prevented these officers from securing a search warrant.
Appellant acknowledges the existence of this court's decision in Wooten v. State, 398 So.2d 963 (Fla. 1st DCA 1981), which appears to uphold a warrantless entry and seizure of evidence by officers under facts similar to those present in this case. Appellant nevertheless distinguishes Wooten on the grounds that in that case, when Detective Richardson arrived, the victim was still alive and the cause of her injuries unknown, and therefore the exigency was not over. This factor, appellant urges, legitimized Richardson's warrantless entry into the home. Appellant urges that it would be an unwarranted extension of the plain view doctrine to hold that police may enter a home where a murder has been committed and seize evidence even after the exigency created by the homicide has ended.
The state argues, in response, that under the plain view exception to the warrant requirement, Officer Miller clearly could have seized the evidence which was in plain view when he conducted his sweep. However, the state argues, it is totally unrealistic to expect Officer Miller, while conducting his emergency sweep, to physically "snatch up" evidence as he moves from room to room. Instead, the state maintains, Officer Miller must be permitted to finish his sweep and then he, or other officers who are on the scene, can proceed to collect the plain view evidence. See State v. Magnano, 204 Conn. 259, 528 A.2d 760, 764 (1987) (when law enforcement officer enters private premises in response to a call for help, and during the course of responding to the emergency observes but does not take into custody evidence in plain view, a subsequent entry shortly thereafter, by detectives whose duty it is to process evidence, constitutes a mere continuation of the original entry, and under such circumstances, it is permissible for the detectives to photograph and take measurements, without a search warrant, of evidence which was in the plain view of the initial responding officers). The state urges us to adopt the rationale of Magnano, and courts of other jurisdictions,[2] which would promote the purpose of the plain view doctrine. We believe our resolution of this case is consistent with those decisions.
We do not interpret the "no murder scene exception" language of Mincey as voiding the warrantless entry and seizure of evidence in this case.
In Wooten v. State, 398 So.2d at 967, this court said:

*580 We do not think that Richardson's entry of the apartment and seizure of evidence exceeded the grounds permissible under the exigency rule. Appellant urges that the exigency had ceased by the time Richardson arrived, and that his subsequent one hour to one hour forty-five minute search was not the type of cursory warrantless search sanctioned in Mincey. We disagree, based upon our view that the entry of all officers on the scene was part of one continuous episode, initially justified by exigent circumstances. We know of no decision and no logical basis for holding that a lawful entry is limited to a single officer, nor any rule that prohibits one officer, legitimately on the premises, from being joined by a sufficient number of his fellow officers, or his superior officers, to take charge and to perform the police functions which are then immediately justified and required.
In distinguishing Wooten, appellant focuses on the earlier passage in Wooten where this court stated that at the time Richardson arrived on the scene the exigency was not necessarily over, commenting that examination and emergency treatment of the child victim was still in progress. Id. at 967. However, in our view this passage may not be read as a limitation on the holding of Wooten: that since the first responding officer's entry into Wooten's apartment was lawful, it was lawful for other officers to enter to assist him and to take charge of the premises while the first officer was occupied with the arrest and removal of Wooten; and that it was also lawful for Detective Richardson to enter for the purpose of supervising and completing the limited investigation of the premises and the seizure of items of evidence or suspected evidence in plain view. Id. at 968.
In sum, it is our view that  assuming the existence of a reasonable time limitation on a police investigation and seizure of evidence incident to entry under exigent circumstances  that time limitation has not been exceeded here; and further, that the officers here did not go beyond the accumulation and collection of plain view evidence. We have also considered the various additional points on appeal and find them to be either without merit or harmless upon consideration of the entire record in the case. Accordingly, the convictions and sentences are
AFFIRMED.
BARFIELD and LAWRENCE, JJ., concur.
NOTES
[1] The items seized included a .45 caliber pistol on a closet shelf visible through the open closet door; a shotgun; appellant's bloody shirt; four rounds from a .38 caliber pistol; a torn green cap; shot shell wadding, and shot removed from the kitchen wall; four shotgun shells; a blood sample from the front gate; a bloodied piece of gauze from a bedroom; a telephone with bloody fingerprints; the victim's wallet, personal papers and social security card; and a blood-soaked towel found underneath the victim's body. The state also introduced into evidence photographs taken inside the home, one of which depicted an item appearing to be a flask used, according to the state, for smoking drugs.
[2] People v. Reynolds, 672 P.2d 529 (Col. 1983); Ortega v. State, 669 P.2d 935 (Wyo. 1983); State v. Johnson, 413 A.2d 931 (Me. 1980); State v. Eacret, 40 Or. App. 341, 595 P.2d 490 (1979); and State v. Anderson, 42 Or. App. 29, 599 P.2d 1225 (1979).