MAY, C.J.
The defendant appeals his conviction and sentence for three counts of Lewd or Lascivious Molestation-Offender 18 or Older, Victim Under 12. He raises five issues, arguing that the trial court erred in: (1) admitting child hearsay evidence; (2) excluding reverse Williams[1] rule evidence; (3) admitting evidence of the defendant’s attempted suicide; (4) allowing an investigator to testify about habits of child abuse victims; and (5) sustaining the State’s objection to part of the defense closing argument. We find no merit in *1272 any of the issues raised, but write to address the admission of the defendant’s attempted suicide.
One summer night in 2009, the victim’s mother went to the shed located in the backyard of her home. When she opened the door, she observed her daughter sitting on a sleeping bag, dressed only in her underwear, facing the defendant, a close family friend. The defendant was fully dressed and kneeling on the floor, facing the victim, who was laughing. The mother “freaked and ran” into the house, and told her husband what she had observed.
The mother and father took the victim into their bedroom and asked her what happened. The father told the victim that she was not in any trouble, and she needed to be honest with them. At first, the victim did not respond when asked whether the defendant had ever touched her. She then told her parents that the defendant “was touching her cacas,”[2] and appeared scared. When the father asked the victim if this had happened anywhere else, the victim told him that it happened on bike rides and once when she was helping the defendant unpack some boxes.
While the parents were speaking to the victim, the grandmother spoke to the defendant. The defendant said that nothing had happened in the shed. According to the defendant, the victim had been changing out of wet clothes and had started to put on some dry clothes that were stored in the shed. When the victim came out of the bedroom, the grandmother took her aside and asked her what had happened, to which the victim replied, “nothing, grandma.”
A day or so later, the mother reported the incident to law enforcement when the victim’s account became more consistent. As time went by, the mother became concerned about the victim’s story and asked law enforcement to hold off on the charges. The mother explained that there had been “drastic changes” in the victim, indicating that she was not telling the truth. By that time, the case had already been handed over to the State Attorney’s Office.
On the same day the mother reported the incident, the defendant called in sick at work. He reported to work the following day, but left early and did not return. He said that he traveled to Arkansas to seek employment.[3] In explaining why, he said the state of the economy and the incident with the victim produced “very stressful circumstances.” One of the defendant’s co-workers testified that he fled the area because the mother was threatening to have him arrested and he needed to “take a drive and clear his head.” The defendant ultimately returned to Florida before the arrest warrant was issued. Law enforcement later found the defendant after he ingested some pills in an attempted suicide. The defendant was arrested approximately two weeks later.
The State ultimately charged the defendant with three counts of Lewd or Lascivious Molestation-Offender 18 or Older, Victim Under 12. The case proceeded to trial. The jury found the defendant guilty as charged. The defendant moved for a new trial, which the trial court denied. The trial court adjudicated the defendant guilty and sentenced him to life imprisonment with credit for time served. The *1273 defendant now appeals his conviction and sentence.
On appeal, the defendant argues the trial court abused its discretion in admitting testimony relating to his suicide attempt because there was insufficient evidence to suggest it was an effort to evade prosecution or indicative of consciousness of guilt. The State responds that the evidence was properly admitted because it evinced the defendant’s consciousness of guilt.
We review “a trial court’s ruling on the admission of evidence advanced to demonstrate consciousness of guilt for abuse of discretion.” Partin v. State, 82 So.3d 31, 38 (Fla.2011).
“ ‘[E]vidence that a suspected person in any manner endeavors to evade a threatened prosecution by any ex post fac-to indication of a desire to evade prosecution is admissible against the accused where the relevance of such evidence is based on consciousness of guilt inferred from such actions.’ ” Penalver v. State, 926 So.2d 1118, 1133-34 (Fla.2006) (quoting Sired v. State, 399 So.2d 964, 968 (Fla.1981)). “[T]he question is whether the evidence ‘indicates a nexus between the flight, concealment, or resistance to lawful arrest and the crime(s) for which the defendant is being tried in that specific case.’ ” Partin, 82 So.3d at 38 (quoting Escobar v. State, 699 So.2d 988, 995 (Fla. 1997)).
Our supreme court’s decision in Penal-ver is helpful because it set some ground rules for “whether threats of suicide or an attempt at suicide are admissible as evidence of consciousness of guilt.” Penalver, 926 So.2d at 1133. There, a trial court admitted testimony that Penalver told a witness: “I might as well be dead” or “I want to kill myself.” Id. at 1132. The witness who heard the statement admitted that the statement was “just something he said in the moment” due to his emotional state. Id.
After reviewing out-of-state cases that allowed such evidence, our supreme court found that Penalver’s statement was not a clear threat to commit suicide. Id. at 1133-34. “[T]he fact that Penalver turned himself in tends to negate the argument that his threat was probative of a desire to avoid prosecution.” Id. at 1134. Law enforcement had only “confronted [him] with a [search] warrant and requested his shoes.” Id. at 1132. The court therefore held that the trial court had abused its discretion in admitting the witness’s statement about Penalver’s comments “because at the time he made the threat, he was not under arrest and had not been threatened with prosecution.” Id. at 1134.
In its analysis, the supreme court discussed Walker v. State, 483 So.2d 791 (Fla. 1st DCA 1986). Id. at 1133. There, the defendant attempted suicide after having been questioned in a murder investigation. Id. The First District found no error in the trial court’s instruction that told the jury it could consider the attempted suicide “as an indication of a desire to evade prosecution.” Id. (quoting Walker, 483 So.2d at 796). The supreme court did not criticize the First District’s decision in Walker.
The defendant relies on Penalver to support his argument that the evidence should not have been admitted. While Penalver set the ground rules, when those rules are applied to the facts of this case, they lead to a different result.
Here, the defendant actually attempted suicide. While that attempt preceded the issuance of the arrest warrant, it occurred after the defendant was aware that law enforcement had been notified of the incident by the victim’s mother. In fact, the defendant left work and the state *1274 after law enforcement was notified. A coworker testified that the defendant fled the area due to the threat of arrest.
As in Walker, there was a sufficient nexus between the defendant’s suicide attempt and the crime to render it admissible. There was no abuse of discretion in the admission of the attempted suicide.

Affirmed.

DAMOORGIAN and GERBER, JJ., concur.

. Williams v. State, 110 So.2d 654 (Fla.1959).

. The victim had been taught to refer to her "private areas” as her "cacas.”

. This testimony comes from the defendant’s bond hearing that followed his suicide attempt. The recording from the hearing was played during the trial, over the defendant's objection.